IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JOSE DANIEL NINO,

    Plaintiff,

v.                                                                                                             No. 18-cv-1224 SMV

ANDREW SAUL,[1]
Commissioner of the Social Security Administration,

    Defendant.

## MEMORANDUM OPINION AND ORDER
## DENYING PLAINTIFF'S MOTION TO REVERSE OR REMAND

THIS MATTER is before the Court on Plaintiff's Motion to Reverse and Remand to Agency for Rehearing, with Supporting Memorandum [Doc. 17], filed on June 5, 2019. The Commissioner responded on July 31, 2019. [Doc. 20]. Plaintiff replied on August 28, 2019. [Doc. 21]. The parties have consented to my entering final judgment in this case. [Doc. 7]. Having meticulously reviewed the entire record and being fully advised in the premises, the Court finds that Plaintiff fails to show reversible error in the Administrative Law Judge's evaluation of certain source opinions. The Motion will be denied, and the Commissioner's final decision, affirmed.

## Standard of Review

The standard of review in a Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether the correct legal standards were applied.

---

[1] Andrew Saul is the current Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Andrew Saul should be substituted for Acting Commissioner Nancy A. Berryhill as the Defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

*Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008). If substantial evidence supports the Commissioner's findings and the correct legal standards were applied, the Commissioner's decision stands and the plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004). Courts must meticulously review the entire record, but may neither reweigh the evidence nor substitute their judgment for that of the Commissioner. *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118. The decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Id.* While a court may not reweigh the evidence or try the issues de novo, its examination of the record as a whole must include "anything that may undercut or detract from the [Commissioner]'s findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005). "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

"The failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (internal quotation marks omitted).

**The Record**

A court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which generally is the ALJ's decision, 20 C.F.R. § 404.981 (1980). In some situations, however, the

Tenth Circuit has held that a court must consider evidence beyond that which was before the ALJ. *See Martinez v. Barnhart*, 444 F.3d 1201, 1207−08 (10th Cir. 2006); *O'Dell v. Shalala*, 44 F.3d 855, 859 (10th Cir. 1994). Pursuant to 20 C.F.R. § 404.970(b), any new and material evidence that relates to the period on or before the date of the ALJ's decision shall be considered by the Appeals Council in determining whether to review the ALJ's decision. If the Appeals Council denies review, the ALJ's decision becomes the Commissioner's final decision. *O'Dell*, 44 F.3d at 858 (citing 20 C.F.R. § 404.981). A court reviews the Commissioner's decision, which is the ALJ's decision and not the Appeals Council's denial of review. *See id.* Because a court reviews the final decision based on "the record as a whole," it will consider the evidence that was before the ALJ as well as the new and material evidence that was before the Appeals Council. *Id.* (citing *Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1028 (10th Cir. 1994)). Considering all the evidence in the administrative record, a court decides whether the ALJ's findings are supported by substantial evidence and whether the correct legal standards were applied. *Maes*, 522 F.3d at 1096.

Here, the Court reviews the ALJ's decision considering the entire record, which does *not* include the evidence submitted to, but rejected by, the Appeals Council and not exhibited in the record. Tr. 2, 34–152. Plaintiff references some of this evidence: two progress notes from Dr. Lang dated May 21, 2015, Tr. 88, and July 2, 2015, Tr. 87. However, Plaintiff raises no clear challenge to the disposition of these progress notes from Dr. Lang or any of the other evidence.[2]

---

[2] If Plaintiff had challenged the disposition of the evidence, this Court would be required to determine whether the Appeals Council had erred in failing to consider it. If the Appeals Council had erred, the Court would remand the case to the Appeals Council "to determine in the first instance whether, following submission of [the] additional, qualifying evidence, the ALJ's decision [was] contrary to the weight of the evidence currently of record." *Chambers*

*See* [Docs. 17, 21]. If the Appeals Council had considered any of the evidence, this Court would also include the evidence in its review of the entire record. However, because the Appeals Council did not consider it—a determination not challenged by Plaintiff—this Court does not consider it either.

**Applicable Law and Sequential Evaluation Process**

In order to qualify for disability benefits, a claimant must establish that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a).

When considering a disability application, the Commissioner utilizes a five-step sequential evaluation process. 20 C.F.R. § 404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). At the first four steps of the evaluation process, the claimant must show: (1) he is not engaged in "substantial gainful activity"; *and* (2) he has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; *and* (3) his impairment(s) either meet or equal one of the Listings of presumptively disabling impairments; *or* (4) he is unable to perform his "past relevant work." 20 C.F.R. § 404.1520(a)(4)(i)–(iv); *Grogan*, 399 F.3d at 1261. If he cannot show that his impairment meets or equals a Listing, but he proves that he is unable to perform his "past relevant work," the burden of proof then shifts to the Commissioner, at step five, to show that the claimant is able to perform

---

*v. Barnhart*, 389 F.3d 1139, 1143 (10th Cir. 2004). Plaintiff, however, did not challenge the Appeals Council's rejection of the evidence, and it plays no part in this Court's review. *See* [Docs. 17, 20].

other work in the national economy, considering his RFC, age, education, and work experience. *Grogan*, 399 F.3d at 1261.

## **Procedural Background**

Plaintiff applied for a period of disability and disability insurance benefits on November 24, 2014. Tr. 18. He alleged a disability-onset date of January 7, 2008. *Id.* His claims were denied initially and on reconsideration. *Id.* ALJ Ann Farris held a hearing on May 2, 2017, in Albuquerque, New Mexico. Tr. 18, 153. Plaintiff appeared by videoconference from Santa Fe, New Mexico, with his attorney. Tr. 18, 153. The ALJ heard testimony from Plaintiff and an impartial vocational expert ("VE"), Nicole B. King, who testified via telephone. Tr. 18, 153–74.

The ALJ issued her unfavorable decision on September 25, 2017. Tr. 29. She found that Plaintiff met the insured status requirements of the Social Security Act through March 31, 2013. Tr. 20. At step one, she found that Plaintiff had not engaged in substantial gainful activity during the period between his alleged onset date and his date last insured. *Id.* At step two, the ALJ found that Plaintiff suffered from the following severe impairments: "major depressive disorder, alcohol abuse, and anxiety." *Id.*

At step three, the ALJ determined that none of Plaintiff's impairments, alone or in combination, met or medically equaled a Listing. Tr. 21–22. Because none of Plaintiff's impairments met or medically equaled a Listing, the ALJ went on to assess Plaintiff's RFC. Tr. 22–27. The ALJ found through the date last insured, Plaintiff had the RFC to perform "a full range of work at all exertional levels but with the following nonexertional limitations: [Plaintiff

was] limited to simple routine tasks, involving no interaction with the public, and only occasional superficial interaction with co-workers." Tr. 22.

At step four, the ALJ found that Plaintiff was unable to perform his past relevant work as a security guard. Tr. 27. Accordingly, the ALJ went on to consider Plaintiff's RFC, age, education, work experience, and the testimony of the VE at step five. Tr. 27–28. She found that Plaintiff could perform work that exists in significant numbers in the national economy and, therefore, was not disabled. Tr. 28. The Appeals Council denied review on October 25, 2018. Tr. 1–3. Plaintiff timely filed the instant action on December 27, 2018. [Doc. 1].

## Analysis

Plaintiff argues that the ALJ's decision should be reversed and the case remanded because the ALJ failed to properly evaluate the opinion of treating psychologist Dr. Lang. [Doc. 17] at 8–15. Plaintiff also argues that the ALJ erred in failing to provide an adequate narrative explanation of the evidence supporting her RFC assessment. *Id.* 7, 16–18. The Court is not persuaded. Plaintiff fails to show reversible error, and the ALJ's decision will be affirmed.

### I. Plaintiff fails to show reversible error in the ALJ's evaluation of Dr. Lang's opinion.

Social Security regulations require that, in determining disability, the opinions of treating physicians be given controlling weight when those opinions are well-supported by the medical evidence and are consistent with the record. 20 C.F.R. § 404.1527(c)(2) (2012). This is known as the "treating physician rule."[3] *Langley*, 373 F.3d at 1119. The idea is that a treating physician

---
[3] Defendant agrees that the treating physician rule applies to this case because Plaintiff filed his claims prior to March 17, 2017. [Doc. 20] at 2 n.3; *see* 82 Fed. Reg. 5844 (Jan. 18, 2017).

provides a "unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations," and therefore, a treating physician's opinion merits controlling weight. *Doyal v. Barnhart*, 331 F.3d 758, 762 (10th Cir. 2003).

In order to receive controlling weight, a treating physician's opinion must be both supported by medical evidence and consistent with the record. If not, the opinion may not merit controlling weight but still must be given deference and weighed using the following six factors:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Watkins v. Barnhart*, 350 F.3d 1297, 1301 (10th Cir. 2003); *see* 20 C.F.R. § 404.1527(c). However, not every factor is applicable in every case, nor must an ALJ always analyze all six factors. What is absolutely necessary, though, is that the ALJ give good reasons—reasons that are "sufficiently specific to [be] clear to any subsequent reviewers"—for the weight she ultimately assigns to the opinion. *Langley*, 373 F.3d at 1119; *see Branum v. Barnhart*, 385 F.3d 1268, 1275 (10th Cir. 2004); 20 C.F.R. § 404.1527(c)(2).

In sum, when properly rejecting a treating physician's opinion, an ALJ must follow two distinct phases. First, the ALJ must find that the opinion is not supported by medical evidence and/or is not consistent with the record. Second, the ALJ must still give deference to the opinion

and weigh it according to the factors listed above. Like all findings, an ALJ's findings in these two phases must be supported by substantial evidence.

Here, Dr. Lang opined that Plaintiff could not meet the competitive standards of the mental abilities and aptitudes needed to do even unskilled work. Tr. 446–47, 25. The ALJ accorded little weight to Dr. Lang's opinion because, essentially, she found it was inconsistent with the rest of the record, not supported by evidence, and because, apparently, the ALJ questioned Dr. Lang's credibility. Although Plaintiff argues otherwise, [Doc. 17] at 9, the Court finds that the ALJ adequately applied the treating physician rule, and her reasons for rejecting the opinion are supported by substantial evidence.

The ALJ gave several reasons why Dr. Lang's opinion was not consistent with the record and not supported. First, the ALJ explained that the description of Plaintiff's symptoms contained in Dr. Lang's May 2015 opinion ("opinion") "far exceed[ed] any problems indicated prior to the date last insured, including symptoms of drowsiness [and] change in appetite resulting in change of weight." Tr. 26. The ALJ found that there was no evidence of drowsiness or weight loss. She acknowledged that Dr. Lang's 2010 evaluation noted that Plaintiff had lost 15 pounds, but the ALJ explained that "this was during a difficult and stressful time during his life." *Id.* Next, the ALJ noted in her decision that when asked about medication side effects at the hearing, Plaintiff did not mention drowsiness. *Id.* Further, there are seven notes from Plaintiff's visits with his primary care physician ("PCP"), Dr. Delgado,[4] between November 2012 and December 2014, but the ALJ found that these notes do not "indicate any significant psychiatric symptoms." *Id.* The Court finds

---

[4] At one of these visits, on April 4, 2013, it appears that Plaintiff was seen by Dr. Delgado's colleague, Zachary M. Musgrave, D.O. Tr. 380–82.

that these reasons show that the ALJ found that Dr. Lang's 2015 opinion was not consistent with the record.

The ALJ's second reason for rejecting Dr. Lang's opinion—although the ALJ herself is not this direct—is that she finds him less than credible, particularly on the issue of how often he saw Plaintiff. The ALJ explains:

> [D]espite his assertion of treatment for five years and no improvement, the record includes no evidence of ongoing treatment over the last five years from the date he completed the opinion. At the hearing, [Plaintiff]'s representative argued that these records were not available because Dr. Lang retired. However, he was able to obtain treatment records and a medical source statement from Dr. Lang from January . . . 2015, and May 2015, prior to his retirement. Had there been ongoing treatment, it would seem reasonable that he would have been able to secure that information as well. Further, Dr. Lang did not mention that records were requested, but unavailable. [Plaintiff] mentioned in December 2014, that he was going to reestablish with Dr. Lang, which leads me to believe that he had not seen Dr. Lang in some time. Moreover, it is not clear whether genuine attempts were made to secure this evidence.

Tr. 26. The Court understands the ALJ to be focusing on the lack of any progress notes corresponding to the treatment sessions that Dr. Lang and Plaintiff mention.[5] Indeed, there were no progress notes from Dr. Lang corresponding to the five years of treatment, 2010 to 2015, that he referenced in his opinion. It is critical to appreciate just how little appears in the record from Dr. Lang. The documents from Dr. Lang comprise the following—and nothing more:

---

[5] As a technical matter, the ALJ is incorrect when she finds that there is "no evidence" of ongoing treatment between 2010 and 2015, because there is evidence. The scant records from Dr. Lang reference the ongoing treatment, and Plaintiff testified that he underwent ongoing treatment with Dr. Lang during that time period. Tr. 162; *see* Tr. 169.

9

- September 13, 2010 "Summary of Treatment and Psychological Testing," Tr. 374–76;

- November 10, 2010 To-Whom-it-May-Concern Letter recommending that Plaintiff be permitted to resume visitation with his children, Tr. 378;

- January 15, 2015 hand-written progress note, Tr. 431, and hand-written note to Plaintiff's primary care physician requesting that the primary care physician prescribe Plaintiff's psychiatric medication, Tr. 432; and

- May 21, 2015 Mental Residual Functional Capacity Questionnaire, Tr. 444–448.

At the hearing in 2017, Plaintiff's counsel insinuated that the progress notes were missing because Dr. Lang retired,[6] Tr. 158, but that explanation did not hold much water with the ALJ. She reasoned that Plaintiff was able to obtain the opinion from Dr. Lang in 2015, and so, she saw no reason why he could not also obtain the progress notes. Tr. 26.

The ALJ goes on to mention additional evidentiary support for her determination that Dr. Lang's opinion was not entirely credible. *See id.* The ALJ noted that Dr. Lang's opinion did not mention any explanation for the lack of progress notes, nor did it mention that the progress notes had been requested. *Id.* The ALJ further pointed to a note from Plaintiff's PCP in December of 2014 that indicated that Plaintiff "was going to reestablish with Dr. Lang." *Id.* That statement led the ALJ to believe that Plaintiff had not seen Dr. Lang in some time. *Id.* Moreover, it was not clear to the ALJ whether genuine attempts were made to secure the progress notes. *Id.* Additionally, based on the lack of any progress notes at all between late 2010 and early 2015, it

---

[6] The attorney told the ALJ:

> Mr. Nino and I talked about the possibility of getting additional information from Dr. Lang, but my client understands that Mr. [sic] Lang retired and he says he's on some sort of retreat in California and very much inaccessible. So we haven't made any attempts to contact Mr. [sic] Lang for any additional information.

Tr. 158.

10

appeared to the ALJ that Dr. Lang "relied on the latest visit and [Plaintiff]'s subjective statements" in formulating his opinion. Tr. 25. Under the circumstances of this case, the Court finds that the ALJ's rejection of Dr. Lang's opinion passes muster.

Plaintiff's arguments do not change the result. First, Plaintiff argues that the ALJ did not complete the first phase of the treating physician rule, i.e., she failed to evaluate whether Dr. Lang's opinion was "well-supported by medically acceptable clinical and laboratory diagnostic techniques," or was "inconsistent with other substantial evidence" in the record. [Doc. 17] at 9 (quoting 20 C.F.R. § 404.1527(c)(2)). However, the ALJ found the opinion unsupported and inconsistent with the rest of the record as described above. Furthermore, because the ALJ accorded "little weight" to Dr. Lang's opinion, she obviously did not give it controlling weight. Tr. 26. The Court is able to follow the ALJ's reasoning, and Plaintiff fails to show that more was required. *See Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012) ("Where, as here, we can follow the adjudicator's reasoning in conducting our review, and can determine that correct legal standards have been applied, merely technical omissions in the ALJ's reasoning do not dictate reversal.").

Plaintiff also challenges the ALJ's finding that Dr. Lang's assessed limitations "far exceed[ed]" the problems indicated prior to the date last insured. As examples, the ALJ cited to the opinion's mention of drowsiness and change in appetite resulting in weight loss; the ALJ found that those symptoms were not present in Dr. Lang's other records. Tr. 26. Plaintiff argues that the ALJ was "picking and choosing portions of the record that support her finding of not disabled and ignoring portions favorable to [Plaintiff]." [Doc. 17] at 10. Plaintiff argues that Dr. Lang's opinion identified numerous symptoms, not just drowsiness and weight loss. *Id.* That is correct; Dr. Lang's

11

opinion identified many other symptoms. *See* Tr. 444–48. The ALJ's point, however, is that the opinion is "far" more restrictive than Dr. Lang's two earlier records (and there are only two) and more restrictive than any of the other records. Tr. 26. As examples, the ALJ specifically discusses weight loss and drowsiness. *Id.* In contrast to Dr. Lang's opinion, which diagnoses anorexia and mentions weight loss and drowsiness, Tr. 444–48, the ALJ points to two records from Dr. Delgado that show a five-pound weight gain and no drowsiness, Tr. 26 (citing Tr. 401, 419). There is no requirement that the ALJ discuss every piece of evidence. More to the point, to warrant remand, Plaintiff would have to show that the ALJ's finding (that Dr. Lang's opinion is far more restrictive than the other medical records) is not supported by substantial evidence or is overwhelmed by contrary evidence. Plaintiff fails to do so. Plaintiff does not argue (much less show) that those many other symptoms are present in Dr. Lang's earlier note, the PCP records, or in any other part of the record. Plaintiff fails to show that remand is warranted.

Plaintiff challenges the ALJ's conclusion that there was "no record of significant treatment [and] no evidence of significant symptoms related to a mental condition." Tr. 24–25; *see* Tr. 26 ("[T]reatment notes from [Plaintiff]'s primary care providers do not indicate any significant psychiatric symptoms."). The Court has reviewed all the records from Plaintiff's seven PCP appointments: one prior to his DLI, Tr. 389–90 (November 16, 2012); and six after his DLI, Tr. 380–82 (April 14, 2013), 392–93 (May 22, 2013), 394–95 (December 3, 2013), 399–400 (April 1, 2014), 401–03 (August 25, 2014), 404–05 (December 2, 2014); along with Plaintiff's description of those records, [Doc. 17] at 10–13. The PCP notes reflect assessment of "anxiety," anxious affect, and refills of effexor and clonazepam at every visit. There is no question that Plaintiff's PCP was consistently treating Plaintiff's anxiety. But the ALJ did not say otherwise.

If the ALJ had found that the PCP records made no mention of psychiatric issues or that the record contained no evidence of psychiatric symptoms, such a finding would not be supported by substantial evidence. But the ALJ's finding did not go that far. The ALJ concluded that these records did not reflect "significant" psychiatric issues. Plaintiff fails to show that the ALJ's conclusion is not supported by substantial evidence.

Moreover, and perhaps more to the point, the ALJ's conclusion was not merely that the PCP records did not reflect "significant" psychiatric symptoms or treatment, with "significant" as some abstract measure. The ALJ was finding that the PCP records did not reflect symptoms that were *as significant* as those recorded in Dr. Lang's opinion. The ALJ rejected Dr. Lang's opinion, in part, because its description of Plaintiff's symptoms "far exceed[ed] any problems indicated prior to the [DLI]," and then the ALJ cited to two PCP records. Tr. 26. The Court understands the ALJ to be comparing Dr. Lang's opinion with the PCP records, and based in part on that comparison, finding that Dr. Lang's assessed symptoms "far exceed[ed]" those recorded elsewhere in the record. Neither this comparison, nor the ALJ's conclusion constitutes an impermissible picking and choosing. This Court may not have interpreted the evidence the same, but reweighing is not permissible. Plaintiff fails to show reversible error.

Plaintiff next argues that the ALJ erred in rejecting Dr. Lang's opinion, at least in part, because Dr. Lang diagnosed agoraphobia even though Plaintiff attended his son's football games, went to the grocery store, drove, and was involved in another intimate relationship after his divorce. [Doc. 17] at 14 (citing Tr. 26). Plaintiff argues that his incidences of "those activities were isolated," and he cites to evidence that could support the diagnosis and symptoms of agoraphobia. *Id.* Even if these reasons given by the ALJ for rejecting Dr. Lang's opinion were

omitted, the ALJ's remaining reasons and analysis would still suffice to reject Dr. Lang's opinion. Remand is not warranted on this ground, even if there were error.

## II. Plaintiff fails to show that the ALJ's narrative discussion about the evidentiary support for the RFC assessment is inadequate.

Next, Plaintiff argues that the ALJ's decision failed to comply with Social Security Ruling ("SSR") 96-8p because it lacked "a narrative discussion linking her findings to citations in the record." [Doc. 17] at 16. Plaintiff quotes the SSR's requirement that an "RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Id.* (quoting SSR 96-8p, 1996 SSR LEXIS 5, at *19). Plaintiff seems to argue that it is impermissibly unclear on what evidence the ALJ relied to formulate the RFC assessment. *Id.* Plaintiff reasons that because the ALJ rejected Dr. Lang's opinion and adopted the non-examining opinions, which opined that the evidence was insufficient to "determine severity during period of eligibility," Tr. 179; *see* Tr. 192 ("There is insufficient evidence to evaluate the claim."), there is no evidence left to support the ALJ's RFC assessment. [Doc. 17] at 16. Defendant's position is that "[t]here was little to support Plaintiff's claim to disability prior to [his DLI of] March 2013, and the ALJ reasonably found that he failed to meet [his] burden [as the claimant]." [Doc. 20] at 10.

Plaintiff's argument, as presented, fails to show that SSR 96-8p requires anything more than what the ALJ included in her decision. The ALJ found that Plaintiff suffered from major depressive disorder, alcohol abuse, and anxiety. Tr. 20–21. She found that those impairments limited Plaintiff to "simple routine tasks, involving no interaction with the public, and only

14

occasional superficial interaction with co-workers." Tr. 22. In making her decision, the ALJ explained that she relied on Plaintiff's own statements and testimony, Tr. 21–22, 27, as well as the records from Plaintiff's PCP visits. Tr. 21–22, 23 (referencing PCP treatment for anxiety), 24 (referencing Dr. Lang's note of September 2010, which discusses Plaintiff's "poor social judgment, exacerbated by alcohol"). The ALJ further relied, at least in part, on the statements of Plaintiff's friend, Ms. Baca. Tr. 27. The ALJ's narrative discussion links her findings to specific portions of the record. Plaintiff fails to show anything more was required.

## Conclusion

Plaintiff fails to show reversible error in the ALJ's weighing of Dr. Lang's opinion or in her narrative discussion of the evidence supporting her RFC assessment. The Motion will be denied.

**IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED** that Plaintiff's Motion to Reverse and Remand to Agency for Rehearing, with Supporting Memorandum [Doc. 17] is **DENIED**. The Commissioner's final decision is affirmed.

**IT IS SO ORDERED.**

_____
**STEPHAN M. VIDMAR**
**United States Magistrate Judge**
**Presiding by Consent**